UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KARI A. KAHN, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) Case No.: |
| S B YEN'S MANAGEMENT GROUP, INC. d/b/a HOMEWOOD SUITES HILTON GARDEN INN SOUTH LOOP, | ) ) ) ) ) |
|     Defendant. | ) ) / |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Kari A. Kahn ("Plaintiff" or "Kahn") and files her Complaint against the Defendant, S.B Yen's Management Group, Inc., d/b/a Homewood Suites Hilton Garden Inn South Loop ("Defendant" or "S B Yen's") and in support states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages and injunctive relief, pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq*. ("ADA") to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful pattern and practice of discrimination and retaliation against Plaintiff due to her disability.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial

1

part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

## THE PARTIES

4. Plaintiff, Kahn, is a citizen of the United States and is, and was at all times material, a resident of the State of Illinois, residing in DuPage County.

5. Defendant, S B Yen, is a Domestic Corporation with its principal place of business within the State of Illinois.

6. Defendant does business in this judicial district at its 806 N. York Road, Hinsdale, IL 60521 location.

7. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

8. Plaintiff has complied with all statutory prerequisites to filing this action.

9. On December 12, 2019, Plaintiff dual-filed a claim with the Illinois Department of Human Rights Commission ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"), against Defendants, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e), based on disability and retaliation.

10. Plaintiff's EEOC charge was filed within three hundred (300) days after the unlawful employment practices occurred.

11. On September 2, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue, upon request.

12. This complaint was filed within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

13. Plaintiff began working for Defendant on March 28, 2019 as a Front desk Supervisor, wherein her job duties included, but not limited to supervising employees, providing customer service, including managing the night shift and conducting night audits.

14. Plaintiff is a disabled female as she suffers from Uterine Fibroids which result in debilitating pain.

15. Plaintiff's disability substantially limits her major life activities such as sleeping walking and standing.

16. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

17. At all times material, Plaintiff was able to perform the essential functions of her job with or without accommodations.

18. In July 2019, Plaintiff began to experience excruciating abdominal pain, before, during and after her menses. Plaintiff went to her doctor, was diagnosed with three uterine tumors that required immediate surgery and was given a doctor's note to provide to her employer.

19. Plaintiff provided to the Defendant's Front Desk Manager, Lorena Briceno a doctor's note of her diagnosis, impeding surgery putting Defendant on notice of future doctor appointments she will need to attend in preparation of her impending surgery.

20. Ms. Briceno provided Jeff O'Donnell, Human Resources Manager with Plaintiff's doctor's note of her diagnosis, letting him know that Plaintiff will be attending doctor's visits as required in preparation of surgery and will need time off for surgery.

21. Plaintiff had not accrued sick time to use for her unexpected pre-surgery doctor

appointments and understood she would not be paid for time off to attend doctor's visits.

22. Immediately after Plaintiff put the Defendant on notice, Ms. Briceno, and Assistant General Manager, Taylor Smith began to create a hostile work environment for Plaintiff.

23. Mr. Smith and Ms. Briceno began to write up Plaintiff for time missed from work to attend pre-surgery required medical appointments citing alleged performance issues.

24. On July 31, 2019 Plaintiff was written up for missing work due to attending a required doctor appointment in preparation for surgery and for a performance issue for not keeping up with the front desk, in which Plaintiff received both a written and verbal warning.

25. Plaintiff informed Mr. O'Donnell of Mr. Smith's and Ms. Briceno's harassment and that Mr. Smith's comment made directly to Plaintiff "it does not matter, if you have a doctor's note, as all absences were a write up offense" and proceeded to issue write ups.

26. Mr. O'Donnell verbally told Mr. Smith and Ms. Briceno that Plaintiff has a doctor's note and they cannot write her up for excused absences.

27. Plaintiff requested short term disability from September 23, 2019 until October 7, 2019 for surgery and medical leave.

28. All prior absences were excused through Human Resources and Plaintiff was approved for short term disability.

29. During the months of August and September 2019, Plaintiff was written up again, for being absent, approximately four (4) times for attending pre-surgery doctor visits, wherein Plaintiff was approved to attend doctor visits, and provided a doctor's note for each visit Plaintiff attended during work hours missed to Defendant.

30. On or about September 23, 2019, Mr. O'Donnell conducted an internal investigation and requested Sr. HR Consultant, Violet Balulis of Tandem HR to contact Plaintiff's

physician to obtain confirmation that Plaintiff was actually treating with, under physician care and scheduled for surgery.

31. Plaintiff found out Defendant contacted her physician and the physician's office would not return Defendants telephone calls. Plaintiff contacted her physician and explained what was going on. Plaintiff's Physician contacted Mr. O'Donnell and confirmed Plaintiff's pre-surgery appointments and scheduled surgery for September 23, 2019 and indicated the Plaintiff will need to be off work for at least six (6) weeks post-surgery to heal completely.

32. On September 23, 2019, Plaintiff had surgery and went on medical leave.

33. On or about October 7, 2019 Plaintiff reached out to Ms. Briceno by text requesting when will she be required to report to work, as her short-term disability leave ends on October 7, 2019 Lorena replied, "schedule is made, I'm off today we'll talk tomorrow."

34. Plaintiff immediately requested a coworker to send her a copy of the schedule that clearly showed Plaintiff was not on the schedule.

35. On or about October 7, 2019 Mr. O'Donnell began physically looking for Plaintiff, then emailed and text messaged Plaintiff requesting what time will she be returning to work that day.

36. Plaintiff informed Mr. O'Donnell that the schedule was made, she was not on the schedule, she reached out to Ms. Briceno to request when she will be returning on October 7, 2019 only to be informed by Ms. Briceno thorough a text message "schedule is made, I'm off today we'll talk tomorrow."

37. On or about October 8, 2019, Ms. Briceno contacted Plaintiff later in the day that she was to return to work on October 9, 2019, knowing that it was two (2) days after she was to return to work on October 7, 2019.

38. On October 9, 2019 Plaintiff return to work with restrictions as to limited mobility and light duty as instructed by her physician and requested an ADA accommodation.

39. On or about October 11, 2019, Ms. Briceno began to harass Plaintiff immediately by interrupting Plaintiff while performing her duties, asking aggressively what she is doing while checking in guests, to lift luggage greater than 10lbs, while standing in front of her demanding she lift the luggage, then to unload a pallet of supplies to restock the market for guests use, which required repetitive bending and lifting. Every time Plaintiff mentioned to Ms. Briceno that she was under doctor's care and had an ADA accommodation, Ms. Briceno in a firm voice told Plaintiff to do it, or she would be written up, so Plaintiff complied with the orders in fear of losing her job.

40. Ms. Briceno knew Plaintiff was under strict orders from her physician and were to receive accommodations with restrictions not to lift anything that could possible cause the sutures that were in place due to surgery, and threatened the Plaintiff that she will be written up again if she did not do what she was told.

41. Again, Plaintiff reported the discrimination and harassment to Mr. O'Donnell, who at this point indicated Plaintiff' "maybe you want to look for another job."

42. It was alleged that Plaintiff was written up for checking a guest into another reservation, when in fact it was well known that another non-disabled employee, Amber Rose did the same exact thing and was not verbally warned, written up, or suspended.

43. On or about October 20, 2019, shortly after reporting the harassment to the Defendant, Plaintiff was placed on suspension indefinitely pending an investigation. Plaintiff was taken off the schedule, suspended for three (3) days and told this was her final write up.

44. On or about October 23, 2019 Defendant terminated Plaintiff's employment.

45. Plaintiff has been damaged by Defendant's illegal conduct.

46. Plaintiff has had to retain the services of the undersigned counsel and has agree to pay said counsel reasonable attorney's fees.

## Count I:
### Disability Based Discrimination in Violation of the ADA

47. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46 above.

48. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

49. Plaintiff was able to perform the essential functions of her job at the time of her unlawful termination.

50. Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

51. Defendant violated the ADA by terminating and discriminating against Plaintiff based on her disability.

52. Plaintiff has been damaged by Defendant's illegal conduct.

53. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

54. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

## Count II:
### Retaliation in Violation of the ADA

55. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-46 above.

56. Defendant intentionally retaliated against Plaintiff for engaging in protected activity by unlawfully terminating her employment.

57. Defendant's conduct violates the ADA.

58. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

59. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

60. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff her costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

*/s/ Gary Martoccio*
Gary Martoccio
ARDC #: 6313431
Spielberger Law Group
4890 W. Kennedy Blvd., Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
gary.martoccio@spielbergerlawgroup.com

*Counsel for Plaintiff*